RECEIVED
NOV 22 2013
AT 8:30_____M
WILLIAM T. WALSH CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>*Plaintiff,*<br><br>v.<br><br>MICHAEL MASTORIS, his heirs, devisees, and personal representatives and his/her, their, or any of their successors in right, title and interest, MRS. MASTORIS, wife of Michael Mastoris, her heirs, devisees, and personal representatives and his/her, their or any of their successors in right, title and interest,<br><br>*Defendants.* | Civil Action No. 13-5008 (PGS)(LHG)<br><br>**MEMORANDUM** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Plaintiff Wells Fargo Bank, N.A.'s Motion to Remand this action to the Superior Court of New Jersey, Chancery Division, Monmouth County (ECF No. 4) pursuant to 28 U.S.C. § 1447(c). The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth below, Plaintiff's Motion to Remand is granted.

I.  **BACKGROUND**

On May 29, 2008, *pro se* Defendant Michael Mastoris ("Mastoris" or "Defendant") executed a 30-year Note in the amount of $1,053,000.00 to Wachovia Mortgage, FSB ("Wachovia")[1] to be paid in installments of $5,180.13 per month at an annual adjustable interest rate of 7.880%. (Certification of Diane A. Bettino in Supp. of Pl.'s Mot. to Remand ("Bettino Cert."), Ex. A at ¶ 1)

---

[1] Wachovia Mortgage, FSB later merged with and became Wells Fargo Bank, N.A. (Bettino Cert., Ex. A at ¶ 4).

(ECF No. 4-2). The Note contained an accelerated default provision whereby Wachovia could exercise the option to demand full payment of the whole principal sum, with all unpaid interest, if any installment payment of interest and principal, taxes and insurance remained unpaid for 30 days after becoming due. (*Id.* at ¶ 5). The Note was secured by a 30-year mortgage on property located in Upper Freehold Township, New Jersey. (*Id.* at ¶ 2). The mortgage was duly recorded with the Monmouth County Clerk's Office on July 22, 2008. (*Id.*).

According to the Plaintiff, on December 15, 2009, Mr. Mastoris defaulted in making the required payments. (*Id.* at ¶¶ 1, 8). After these payments remained unpaid for more than 30 days, Plaintiff elected to exercise its option to demand full payment of the whole principal sum and all unpaid interest. (*Id.* at ¶ 8). On April 6, 2010, Wells Fargo filed a Foreclosure Complaint against Defendant in the Superior Court of New Jersey, Chancery Division, Monmouth County requesting the court to: (1) fix the amount due on the mortgage; (2) bar and foreclose the Defendant of all equity in the Upper Freehold Township property; (3) direct payment to Wells Fargo in the amount provided for in the mortgage; (4) adjudge that the Upper Freehold Township property be sold to satisfy the amount due on the mortgage; and (5) appoint a receiver to take custody, manage and preserve the Upper Freehold Township property prior to its sale. (*Id.* at ¶ 12). In its complaint, Wells Fargo alleged that it became entitled to possession of the Upper Freehold Township property as of January 15, 2010, thirty days after Defendant's default in making the required payments.

On August 20, 2010, default was entered against the Defendant in the Superior Court after he failed to respond to the Foreclosure Complaint. (Bettino Cert., Ex. B). On January 22, 2013, Wells Fargo applied to the Superior Court for entry of Final Judgment. (*Id.*). On February 1, 2013, the Superior Court entered Final Judgment in favor of Wells Fargo and entered a Writ of Execution.

(*Id.*) Two-and-a-half months later, on April 16, 2013, Mr. Charles Edward Lincoln III[2], who is not a party to the Foreclosure Action, filed a Motion to Vacate Final Judgment and Intervene based on an alleged unrecorded "deed" in the property in question. (*Id.*). In an affidavit submitted in support of the Motion to Vacate Final Judgment dated March 7, 2013, Mr. Mastoris stated that he "deeded [his] property to Charles Edward Lincoln III in December 2009 and [has] lived as his tenant since then, paying $1000/month rental since that time." (Aff. of Michael N. Mastoris in Supp. of Def.'s Motion to Vacate Final J. ("Mastoris Aff.") at 1). Mr. Mastoris also stated that he "assigned to [Charles Edward Lincoln III his] rights concerning th[e] mortgage and gave him full power of attorney." (*Id.* at 2). According to Mr. Mastoris' affidavit, "the deeds and assignments were recorded in December 2009-January 2010." (*Id.*) Mr. Mastoris claimed to "have [in his possession] the file marked from Ocean County" memorializing the recording of the deed and stated that he and Mr. Lincoln had "recently . . . 're-filed' the documents referring to 24 Hluchy in Monmouth County." (*Id.*).[3] Mr. Mastoris further stated that "neither [he] nor anyone in [his] household were ever served with Wells Fargo's complaint for foreclosure" and that he "first learned about the Final Judgment entered against [him] on or about Friday February 22, 2013[.]" (*Id.* at 1).

---

[2] Mr. Charles Edward Lincoln III is Chief of Operations of Tierra Limpia/Deo Vindice, an organization which purportedly "provid[es] information and help[s] people understand their rights and how to save their homes from foreclosure." (Def.'s Notice of Removal, Ex. A at 82) (ECF No. 1-1). In 2000, Mr. Lincoln was convicted in Texas on a federal felony charge of falsely representing his Social Security number when applying for a Wells Fargo checking account. (*Id.* at 54). As a result of this conviction, Mr. Lincoln gave up his license to practice law in the state of Texas. In another matter, he was disbarred from the United States District Court for the Western District of Texas "after a federal judge requested an investigation of Lincoln because two of his clients had a falsified receipt. The receipt purported to be from the federal court clerk and represented funds the clients had given Lincoln. The clients believed Lincoln was depositing their money in an escrow account related to their case. Two days before a hearing by the federal court's admissions committee, Lincoln went to his clients' home, instructed them not to tell the judge that he gave them the receipt, which he asked them not to produce, and he gave the clients a cashier's check for $6,000 . . . . In a previous lawsuit, the same judge determined that Lincoln was involved in discovery abuse and filed duplicative motions. The judge issued sanctions and dismissed the lawsuit with prejudice." (*Id.*). Several investigations into these matters led to Mr. Lincoln's subsequent disbarments in California and Florida. (*See id.* at 13-79).

[3] According to Plaintiff's Letter Brief filed in opposition to Mr. Lincoln's Motion to Intervene and Vacate the Final Judgment, the "deed" was not recorded until March 4, 2013. *See* Letter Brief from Diane A. Bettino, Reed Smith, Counsel to Wells Fargo Bank, N.A., to Hon. Patricia del Bueno Cleary, Judge Presiding, Superior Court of N.J., Chancery Div., Monmouth Cnty. (Aug. 14, 2013) (ECF No. 1-1).

On August 14, 2013, Plaintiff filed a letter brief with the Superior Court in opposition to Mr. Lincoln's Motion to Intervene and Set Aside the Final Judgment. (Pl.'s Letter Br. in Opp. to Defs.' Mot. to Vacate Final J. and Intervene ("Pl.'s Letter Br.") (ECF No. 1-1). In its opposition, Plaintiff argued that Mr. Lincoln's motion "lacked any merit because an unrecorded interest in land at the time of the entry of Final Judgment is no basis to vacate the Final Judgment[.]" (Pl.'s Mem. in Supp. of Mot. to Remand ("Pl.'s Mot. to Remand") at 3) (ECF No. 4-1). Wells Fargo averred that it "properly foreclosed on the Property and Final Judgment was entered[,]" and there "is no basis to reopen that judgment, by Mastoris, Lincoln, or anyone else." (Pl.'s Letter Brief at 2). Plaintiff further informed the Superior Court in its letter that Mr. Lincoln "has also made baseless and inflammatory assertions that the note and mortgage signed by Mastoris are forgeries . . . [and] repeatedly demanded to view the note and mortgage with his several experts." (*Id.* at 2 n.4). Furthermore, Plaintiff suggested that Mr. Lincoln seems to be conducting "the classic definition of a foreclosure rescue scam[]" and, given his prior disbarments in Texas, Florida and California, is engaged in the unauthorized practice of law. (*Id.* at 2-3).

After receipt of Well Fargo's opposition, Mr. Mastoris and Mr. Lincoln sought to adjourn the August 23, 2013 return date of their motion, however, their request was denied by the Superior Court on August 19, 2013. (Pl.'s Mot. to Remand at 3). Two days later, on August 21, 2013, Mr. Mastoris and Mr. Lincoln removed this action to this Court by filing a Notice of Removal pursuant to 28 U.S.C. § 1443(1) (ECF No. 1).[4] In their Notice of Removal, Mr. Mastoris and Mr. Lincoln requested that this Court extend the application of civil rights removal under 28 U.S.C. § 1443(1) beyond cases involving racial equality to all cases in which an individual's rights "will inevitably be denied" by operation of a state law. (Def.'s Notice of Removal at 2, 7) (ECF No. 1). Specifically,

---

[4] The pending Motion to Vacate Final Judgment was subsequently adjourned by the Superior Court following the filing of this Notice of Removal.

Mr. Mastoris and Mr. Lincoln contend that "civil rights removal must be reinterpreted, [because] its judicially crafted role [is] nothing more than a race-based affirmative action program." (*Id.* at 6). Mr. Mastoris and Mr. Lincoln also stated their belief that Wells Fargo is "seek[ing] to enforce a forged promissory note in a suit where notice of suit was never served[.]" (*Id.* at 4).

On August 23, 2013, Wells Fargo filed the instant Motion to Remand requesting that this Court remand this matter to the Superior Court and award Plaintiff with attorney's fees and costs. In its Motion to Remand, Plaintiff contends that the "Defendant and Mr. Lincoln purportedly removed the Foreclosure Action under 28 U.S.C. § 1443(1), a civil rights removal statute that . . . only applies to cases involving racial equality." (Pl.'s Mot. to Remand at 1). Plaintiff argues that the foreclosure action "does not implicate any racial issues" and, therefore, "there is no basis for this Court to exercise federal jurisdiction." (*Id.* at 1-2). Furthermore, Plaintiff contends that Defendant and Mr. Lincoln's "objectively unreasonable and frivolous conduct in removing this case" warrants an award of attorney's fees and costs. (*Id.* at 2). Plaintiff's motion is unopposed.

## II. DISCUSSION

### A. Standards for Removal and Remand

An action brought in state court may be removed to the appropriate federal district court by the defendant if that federal district court would have had original jurisdiction over the matter. *See* 28 U.S.C. § 1441(a). In order to remove the matter to the district court, the defendant must file a notice of removal, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon defendant or defendants in such action." 28 U.S.C. § 1446(a). When an action is removed to federal court pursuant to 28 U.S.C. § 1441, the removing party bears the burden of demonstrating that the federal court has subject matter jurisdiction over the action. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir.

2004); *see also Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (stating that the removing party "bears the burden of proving that jurisdiction exists[.]"). The Third Circuit has clarified that "[r]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Id.* (citing *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Removal of matters to federal court is also permitted in limited instances under 28 U.S.C. § 1443. Pursuant to § 1443(1), a defendant may remove a civil action or criminal prosecution commenced in a State "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof[.]" A state court defendant who seeks removal under 28 U.S.C. § 1443(1) "must demonstrate both (1) that he is being deprived of rights guaranteed by a federal law 'providing for . . . equal civil rights'; and (2) that he is 'denied or cannot enforce that right in the courts' of the state." *Davis v. Glanton*, 107 F.3d 1044, 1047 (3d Cir. 1997) (quoting *Georgia v. Rachel*, 384 U.S. 780, 788 (1996)). With respect to the first prong, "the phrase 'any law providing for . . . equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality." *Rachel*, 384 U.S. at 792 (quoting 28 U.S.C. § 1443(1)); *see also Davis*, 107 F.3d at 1047. In regards to the second prong, "removal is available where the state court defendant's federal civil rights would 'inevitably be denied by the very act' of being brought to trial in state court." *Id.* at 1050 (quoting *City of Greenwood v. Peacock*, 384 U.S. 808, 828 (1966)). "This provision normally requires that the 'denial be manifest in a formal expression of state law,' . . . such as a state or constitutional provision, 'rather than a denial first made manifest at the trial of the case.'" *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (quoting *Rachel*, 384 at 799, 803).

An action that has been removed to federal court can be remanded to state court, pursuant to 28 U.S.C. § 1447(c), if the removal procedure was defective. 28 U.S.C. § 1447(c) states, in relevant part, that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." According to the Third Circuit, the "party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett*, 357 F.3d at 396. Accordingly, on a motion to remand, the burden of demonstrating a proper basis for removal remains with the removing party. *See Carroll v. United Air Lines*, 7 F. Supp. 2d 516, 519 (D.N.J. 1998) ("When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal.").

In regards to reimbursement for attorney's fees and costs, 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award attorney fees and costs is left to the district court's discretion, to be exercised based on the nature of the removal and the nature of the remand. The "district court may require the payment of fees and costs by a party which removed a case which the court then remanded, even though the party removing the case did not act in bad faith." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). Ultimately, "a district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Id.*

B. Analysis

Defendant Mastoris and Mr. Lincoln purported to remove this action under 28 U.S.C. § 1443(1), however, they make no allegations that the Foreclosure Action instituted by Wells Fargo

7

involved discrimination on the basis of race. In fact, in a letter filed with this Court on August 29, 2013, the Defendant concedes that this matter does not involve issues of racial equality. He states, in relevant part, "I want to admit to this court, at the outset, that I know I have removed this case to the United States District Court under a set of circumstances which the United States Supreme Court has never allowed before." (Pl.'s Letter to Magistrate Judge Lois H. Goodman at 6) (ECF No. 5). He further acknowledges that the "United States Supreme Court has said that Civil Rights Removal should only be allowed to remedy race-based discrimination enshrined in and authorized by state statutes," but argues that the Supreme Court's interpretation of the statute is "preposterous" and amounts to "nothing more than a judicially formulated and implemented affirmative action . . . program." (*Id.* at 6-7). Instead of demonstrating that the Foreclosure Action involves an issue of "civil rights stated in terms of racial equality", *Rachel*, 384 U.S. at 792, as required under § 1443(1), the Defendant and Mr. Lincoln argue that this Court should take the step of extending the application of 28 U.S.C. § 1443(1) to all cases in which an individual's rights will inevitably be denied by operation of a state law. (Def.'s Notice of Removal at 2, 7).

While the Defendant also contends that he was never served with Wells Fargo's Foreclosure Complaint and was, therefore, denied due process of law under the Fourteenth Amendment, the Third Circuit has stated that "[b]road contentions under the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443 because the general guarantee of that clause does not include the specific language of racial equality required by § 1443." *St. James Assocs. v. Larsen*, 67 Fed. Appx. 684, 686 (3d Cir. 2003) (citing *Rachel*, 384 U.S. at 792). The Supreme Court has similarly recognized that "broad contentions under . . . the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of [that] clause[] are phrased in terms of general application available to all persons or

citizens, rather than in the specific language of racial inequality that § 1443 demands." *Rachel*, 384 U.S. at 792. This Court declines the Defendant's invitation to simply disregard established Supreme Court precedent and instead finds that the Defendant has failed to allege that the state court Foreclosure Action involves issues of racial inequality. Because Defendant has not alleged anywhere in his petition that the Foreclosure Action involves issues of racial inequality, § 1443(1) provides no basis for this Court's proposed exercise of subject matter jurisdiction.[5]

Furthermore, the Court finds that the Defendant has failed to demonstrate that he will be unable to enforce his civil rights in state court. The issues raised by the Defendant and Mr. Lincoln, including the alleged lack of notice and allegedly forged mortgage documents, are issues that can be adjudicated in state court and it is "expected that the protection of federal constitutional or statutory rights [can] be effected in the . . . state proceedings[.]" *Johnson*, 421 U.S. at 219-20. While this Court expresses no opinion on the merits of Defendant's allegations, they do not state grounds for removal under § 1443 even if proven true. *See Brown v. Moore*, 366 Fed. Appx. 327, 329 (3d Cir. 2010); *see also Davis* 107 F.3d at 1048 (stating that "it is not enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been . . . denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court.") (internal citations omitted). Moreover, the federal courts are always open to protect the civil rights of individuals, however, the courts are not a vehicle to unduly prolong litigation as the Defendant proposes. Accordingly, Plaintiff's Motion to Remand this action to the Superior Court of New Jersey, Chancery Division, Monmouth County will be granted.

---

[5] The Court also finds that 28 U.S.C. § 1443(2) is unavailing to the Defendant inasmuch as it "confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights." *Peacock*, 384 U.S. at 824. Because neither the Defendant nor Mr. Lincoln are federal officers or agents, § 1443(2) does not grant them a right to removal under the statute.

The Court denies Plaintiff's request for attorney's fees and costs because the Plaintiff has not submitted an affidavit in support of its application and the Court is unable to determine what constitutes a reasonable amount. Costs of suit should be assessed by the Clerk.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (ECF No. 4) is **GRANTED**. An appropriate Order will issue.

Date: November 22, 2013

PETER G. SHERIDAN, U.S.D.J.